## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CYNTHIA GARZA,**

      **Plaintiff,**

      **vs.**                                **Civ. No. 19-699  JFR**

**ANDREW SAUL, Commissioner**
**of the Social Security Administration,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14)[2] filed October 9, 2019, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed February 14, 2020.  Doc.  21.  Defendant filed a Response on May 14, 2020.  Doc. 25.  And Plaintiff filed a Reply on May 28, 2020. Doc. 26.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

### I.  Background and Procedural Record

    Plaintiff Cynthia Garza (Ms. Garza) alleges that she became disabled on June 25, 2015, at the age of thirty-six and six months, because of lupus, Sjögrens syndrome, Raynaud's disease, rheumatoid arthritis, fibromyalgia, asthma, anxiety, depression, functional neurological disorder,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 14), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

functional movement disorder, and conversion disorder.  Tr. 422.  Ms. Garza completed two

years of college in 2002.  Tr. 423.  Ms. Garza has professional licenses in real estate, loans, and

securities.  *Id.*  Ms. Garza worked in marketing, public relations, and business development for

medical businesses, and as a chief executive officer for a legal business.  Tr. 423.  Ms. Garza

stopped working in 2015 because of her medical problems.  Tr. 422.

On November 2, 2015, Ms. Garza filed an application for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq*.  Tr. 310-11.  On November 9, 2015, Ms. Garza filed for Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 312-19.   On March 3, 2016,

Ms. Garza's applications were denied.  Tr. 95-107, 108-120, 121, 122, 161-66.  They were

denied again at reconsideration on January 26, 2017.  Tr. 123-39, 140-56, 157, 158, 172-77.

Upon Ms. Garza's request, Administrative Law Judge (ALJ) D'Lisa Simmons held a hearing on

May 11, 2018.  Tr. 47-94, 180-81.  Ms. Garza appeared in person at the hearing with attorney

representative Robert A. Hager.[3]  *Id*.  On August 9, 2018, ALJ Simmons issued an unfavorable

decision.  Tr. 20-38.  On June 6, 2019, the Appeals Council issued its decision denying

Ms. Garza's request for review and upholding the ALJ's final decision.  Tr. 2-5.  On July 31,

2019, Ms. Garza timely filed a Complaint seeking judicial review of the Commissioner's final

decision.  Doc. 1.

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

---

[3] Ms. Garza is represented in these proceedings by Attorney Laura Johnson.  Doc. 1.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age,

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

> education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

> **B.      Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ made her decision that Ms. Garza was not disabled at step five of the sequential evaluation. Tr. 35-38.  The ALJ determined that Ms. Garza met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity from her alleged onset date of June 25, 2015.  Tr. 25.  She found that Ms. Garza had severe impairments of lupus, Sjögrens syndrome, Raynaud's Disease, fibromyalgia, anxiety disorder, depressive disorder, post-traumatic stress disorder, disorder of the lumbar and cervical spine with radiculopathy, and chronic pain syndrome.  Tr. 25.   The ALJ also found that Ms. Garza had nonsevere impairments of asthma, functional/abnormal neurological disorder, chronic fatigue, hypertension, diverticulosis, GERD, irritable bowel syndrome, headaches, obstructive sleep apnea, antiphospholipid syndrome, gastroenteritis, Vitamin D deficiency, acute cystitis with hematuria, anemia, insomnia, dystonia of the hands, non-epileptic seizure disorder, conversion disorder, rule out personality disorder, history of marijuana use, and Cluster B personality traits.  Tr.  26.  The ALJ determined, however, that Ms. Garza's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 26-29.  Accordingly, the ALJ proceeded to step four and found that Ms. Garza had the residual functional capacity to

> lift, carry, push or pull no more than 20 pounds, occasionally and 10 pounds, frequently.  The claimant can sit, stand or walk for a total of 6 hours a day each intermittently, through out an 8-hour workday.  The claimant would require a sit/stand option every 30 minutes.  The claimant would be limited to frequent

5

> crouching, crawling, kneeling, and only the occasional climbing of stairs or
> ramps.  The claimant can never climb ladders, ropes, or scaffolds.  The Claimant
> should have no exposure to sunlight as part of her job functions, such as working
> outside.  The claimant must avoid the use of dangerous machinery, or work at
> unprotected heights.  The claimant must not be around open bodies of water or
> open flames in the workplace.  Due to moderate restrictions in understanding,
> remembering, or applying information, or concentration, persistence, or pace, the
> claimant would be limited to performing simple, routine, repetitive work, with 1,
> 2, or 3 step instructions, in an environment requiring few decisions.

Tr. 30.  The ALJ determined that Ms. Garza could not perform any of her past relevant work, but

that considering Ms. Garza's age, education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national economy that she can perform.  Tr.

35-38.  The ALJ, therefore, concluded that Ms. Garza was not disabled.  Tr. 39.

     In support of her Motion, Ms. Garza argues that (1) the ALJ erred by improperly rejecting

the opinion of treating rheumatologist, Jacqueline Vo, M.D.; (2) the ALJ erred by improperly

weighing the opinion of evaluating neuropsychologist, Adriana Strutt, Ph.D.; and (3) the ALJ

erred by failing to account for the moderate limitations in the opinion of nonexamining State

agency psychologist, Thomas VanHoose, Ph.D.  Doc. 21 at 2, 15-27.

     For the reasons discussed below, the Court finds that the ALJ erred in weighing

Dr. Strutt's opinion and failed to account for Dr. VanHoose's moderate limitations regarding

Ms. Garza's ability to do work-related mental activities.   As such, this case requires remand.

     **A.**    **Relevant Medical Evidence**

        **1.**    **Methodist Hospital**

     On September 5, 2015, Ms. Garza, was admitted to Methodist Hospital in Houston,

Texas, for "deterioration in ability to function [in] the setting of recent stressors."  Tr. 967-68.

The discharge summary notes that on admission Ms. Garza reported symptoms of "depressed

mood, poor appetite, hopelessness, guilt, decreased energy and anhedonia, as well as general

anxiety and history of trauma with nightmares and flashbacks." *Id.* The initial mental status exam indicated poor eye contact, eyes intermittently rolling back, bilateral hand tremors, and suicidal ideation. *Id.* Ms. Garza was treated with "supportive therapy, group therapy, occupational therapy, and milieu therapy." *Id.* The discharge summary notes that over the course of her treatment Ms. Garza became "less depressed and tearful, was no longer passively suicidal or considering self-harm, her sleep improved and she was able to participate in group activities," although Ms. Garza did continue to have psychogenic seizures in stressful situations. *Id.* Once her treatment was optimized, Ms. Garza was discharged on September 18, 2015, to a rehabilitation facility to work on "physical therapy and her strength in order to become more independent." *Id.* Axis I discharge diagnoses included posttraumatic stress disorder, conversion disorder, and mood disorder NOS. Tr. 966. The attending physician assessed a GAF score of 50.[5] Ms. Garza was also instructed to follow up with psychiatry. Tr. 967.

### 2. HealthSouth Rehabilitation Hospital of Humble

On September 18, 2015, Ms. Garza was admitted to HealthSouth Rehabilitation for continuation of her care and rehabilitation after being discharged from Methodist Hospital. Tr. 924-25. The history of Ms. Garza's illness notes that she presented to Methodist Hospital with a history of depression and after she attempted to hurt herself. *Id.* It was also noted that Ms. Garza had a history of pseudoseizures. *Id.* While hospitalized, Ms. Garza "developed a weakness of both lower extremities and inability to ambulate," experienced pseudoparalysis of the lower extremities, and had difficulty with balance and mobility. *Id.* Attending physician

---

[5] The GAF is a subjective determination based on a scale of 100 to 1 of "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* at 34.

Dr. Emile Mathurin indicated that over the course of her rehabilitation therapy Ms. Garza's

symptoms "waxed and waned" and that she continued to have pseudoseizures, but that ultimately

she stabilized enough such that she could manage her activities of daily living independently.

Tr. 925.  Ms. Garza was discharged on September 28, 2015, with a walker and wheelchair.  *Id.*

Dr. Mathurin also requested a neuropsychological consult.  *Id.*

### 3.  Cecilia P. Lonnecker, Ph.D.

On February 1, 2016, Ms. Garza presented to Cecilia P. Lonnecker, Ph.D., for a

neurology consult based on Ms. Garza's history of psychogenic seizures.  Tr. 806-12.  Ms. Garza

reported a history of depression, anxiety, and conversion disorder.  Tr. 806.  Ms. Garza also

reported a history of lupus, Sjögrens disorder, Raynaud's disease, fibromyalgia and rheumatoid

arthritis.  *Id.*  Ms. Garza explained that she was diagnosed with conversion disorder in the

summer of 2015 based on months of experiencing paralyzing seizures.  Tr. 806, 808.

Dr. Lonnecker noted Ms. Garza's medical history, activities of daily living, social functioning,

past history, and performed a direct mental status examination.  Tr. 808-810.  At the end of the

exam, Dr. Lonnecker noted that Ms. Garza experienced a pseudoseizure which she observed.  *Id.*

Based on Dr. Lonnecker's exam and observations, she diagnosed

> 300.11.  Conversion Disorder.  The claimant has a history of and exhibited altered
> voluntary motor functioning with mixed speech and attacks, paralysis.  Records
> indicate no neurological etiology.  The claimant reports stress induced functional
> impairment.

> 300.09.  Other Specified Anxiety Disorder.  The claimant reports worry and stress
> exacerbate conversion symptoms.  She reports feeling overwhelmed.

> 311.  Other Specified Depressive Disorder.  The claimant reports some
> depression, decreased interest in activities, guilt about being depressed.

> Borderline Traits.  The claimant reports a history of excessive extreme
> relationships lifelong in nature, feeling of abandonment.  Identity disturbance was
> suggested with some grandiosity reporting increased feelings of achievement and

decreased self worth, history of self mutilation as a teen, none current, continued gravitation toward abusive relationships.

Tr. 811.  Dr. Lonnecker assessed that Ms. Garza's status was "guarded," and that Ms. Garza could benefit from psychological intervention and following the directives of her healthcare team.  *Id.*  As for Ms. Garza's functional capacity, Dr. Lonnecker assessed that

> [t]he claimant was able to understand instructions at the current session.  She carried out tasks.  Concentration was adequate.  There were no speech or motor difficulties until the end of the session when she was told that the session was over at which point she had a sudden acute attach.  The claimant may have difficulty in a competitive work setting.  She voiced no motivation to work.  She has not sought treatment per medical directives.  She has assumed the disabled role.

*Id.*

### 4.   Susan Thompson, M.D.

On March 2, 2016, nonexamining State agency psychological consultant Susan Thompson, M.D., reviewed the medical evidence record.[6]  Tr. 102.  Dr. Thompson prepared a Psychiatric Review Technique ("PRT")[7] and rated the degree of Ms. Garza's functional limitation in the area of activities of daily living as moderate, in the area of maintaining social functioning as mild, and in the area of maintaining concentration, persistent and pace as moderate.  Tr. 102.  Dr. Thompson also prepared a Mental Residual Functional Capacity Assessment ("MRFCA")[8] in which she found in Section I that Ms. Garza had no limitations in

---

[6] In the "Additional Narrative" section of Dr. Thompson's findings, Dr. Thompson indicated she reviewed an August 11, 2015, ER note; an August 12, 2015, neurology consult; a November 23, 2015, new patient consult; and Dr. Lonnecker's neuro consult.  Tr. 102.

[7] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

[8] The MRFCA form instructions explain: "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the

the area of understanding and memory; moderate limitations in her ability (1) to perform

activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances and (2) to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods in the area of sustained concentration and persistence;

moderate limitations in her ability (1) to interact appropriately with the general public and (2) to

get along with coworkers or peers without distracting them or exhibiting behavioral extremes in

the area of social interactions; and moderate limitations in her ability to respond appropriately to

changes in the work setting in the area of adaptation.  Tr. 104-105, 117-118.  Dr. Thompson then

concluded in Section III that

> [c]laimant can understand, remember and carry out complex instructions, make
> decisions, attend and concentrate for extended periods, accept instructions and
> respond appropriately to changes in a routine work setting.

Tr. 105, 118.

### 5.    <u>Behavioral Hospital of Bellaire</u>

On October 7, 2016, Ms. Garza was admitted to Behavioral Hospital of Bellaire for

increased depression and agitation.  Tr. 906-21.  Attending physician Dr. Jamal Rafique noted

that Ms. Garza "appeared delusional and paranoid."  Tr. 906.  A psychiatric evaluation by Megan

Talley, M.D., explained that Ms. Garza became violent while in a partial health hospitalization

program and was being admitted secondary to violent behavior.  Tr. 902.  Dr. Talley noted that

Ms. Garza had been "hospitalized here 3 to 4 weeks go," and hospitalized in 2015 for self-harm.

---

narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is
documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory,
sustained concentration and persistence, social interaction and adaptation).  Any other assessment information
deemed appropriate may be recorded in the MRFC – Additional Explanation text box."  Tr. 84   Case law discussing
"Section I" and "Section III" therefore remains relevant.

*Id.*  Dr. Talley diagnosed major depressive disorder, recurrent, severe, with psychotic features, and anxiety disorder, NOS.  Tr. 904.  A psychological assessment conducted on October 9, 2016, indicated diagnoses of "depression, anxiety, lability, chronic [and] multiple medical illnesses."  Tr. 917.  The psychological assessment indicated that Ms. Garza would benefit from individual therapy weekly and finding an outpatient psychiatrist.  *Id.*  Dr. Rafique discharged Ms. Garza on October 10, 2016, and advised her, *inter alia*, to go to Kinghaven Counseling.  Tr. 900-01.

### 6.      <u>Kinghaven Counseling Group</u>

On October 24, 2016, Ms. Garza presented to Kinghaven Counseling Group and underwent a clinical neuropsychological evaluation by Joel K. Levy, Ph.D.  Tr. 1326-28.  Dr. Levy noted Ms. Garza's presenting problems,[9] history of present psychological illness, and general history, and indicated his mental status and behavioral observations.  *Id.*  Based on the International Statistical Classification of Diseases and Related Health Problems, Tenth Edition, Dr. Levy diagnosed posttraumatic stress disorder and major depressive disorder, current, severe.  Tr. 1327.  He also diagnosed rule out bipolar II disorder and borderline personality disorder. *Id.*  Dr. Levy indicated that additional testing was required for diagnostic clarification, and recommended, *inter alia*, that Ms. Garza participate in a psychiatric consultation and therapy.  *Id.*

On October 27, 2016, Ms. Garza began outpatient psychiatric therapy at Kinghaven Counseling Group.  Tr. 1351-53.  Healthcare provider Febin James conducted an intake and assessed provisional Axis I diagnoses of major depressive disorder and conversion disorder,

---

[9] Ms. Garza reported social isolation, grinding teeth, lack of motivation, lethargy, low self-esteem, distrust of others, feelings of abandonment, easily overwhelmed, sleep difficulties and nightmares, memory problems, numerous health problems, history of self-harm, and history of sexual abuse.  Tr. 1326.

functional paralysis and seizure.  Tr. 1352.  He assessed a GAF score of 45.[10]  Ms. Garza

attended eleven outpatient therapy sessions with various providers at Kinghaven Counseling

between October 27, 2016, and October 17, 2017.  Tr. 1329-32, 1333-36, 1337-39, 1340-41,

1343-44, 1348-49, 1351-53, 1354-55, 1356-57, 1358-60, 1360-61.  The provisional diagnoses

and GAF score remained consistent throughout her outpatient therapy  *Id.*

### 7.   <u>Thomas VanHoose Ph.D.</u>

On January 25, 2017, nonexamining State agency psychological consultant Thomas

VanHoose, Ph.D., reviewed the medical evidence record at reconsideration.[11]  Tr. 131-32, 148-

49.  Dr. VanHoose prepared a PRT and rated Ms. Garza's degree of functional limitation in the

area of activities of daily living as moderate, in the area of maintaining social functioning as

mild, and in the area of maintaining concentration, persistent and pace as moderate.  Tr. 131,

148.  Dr. VanHoose also prepared a MRFCA in which he affirmed Dr. Thompson's Section I

findings that Ms. Garza had no limitations in the area of understanding and memory; moderate

limitations in her ability (1) to perform activities within a schedule, maintain regular attendance,

and be punctual within customary tolerances and (2) to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods in the area of

sustained concentration and persistence; moderate limitations in her ability (1) to interact

appropriately with the general public and (2) to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes in the area of social interactions; and

---

[10] *See* fn. 5, *supra*.

[11] In the "Additional Explanation" section, Dr. VanHoose indicates "See MRFC."  Tr. 131, 148.

moderately limited in her ability to respond appropriately to changes in the work setting in the

area of adaptation.  Tr. 104-105, 117-118.  Dr. VanHoose similarly assessed in Section III that

> [c]laimant can understand, remember and carry out complex instructions, make
> decisions, attend and concentrate for extended periods, accept instructions and
> respond appropriately to changes in a routine work setting.

Tr. 137, 154.

### 8.   Adriana M. Strutt, Ph.D., ABPP-CN

On November 20, 2017, Ms. Garza presented to Board Certified Clinical

Neuropsychologist Adriana M. Strutt, Ph.D., for an independent neuropsychological evaluation.

Tr. 1373-79.  Dr. Strutt used the following evaluation procedures: (1) Clinical Interview;

(2) Performance Validity Measures; (3) Montreal Cognitive Assessment; (4) Wechsler Adult

Intelligence Scales-IV; (5) Wechsler Memory Scale-4th Edition; (6) Trail Making Test A&B;

(7) Rey Auditory Verbal Learning Test; (8) Stroop Color-Word Test; (9) Controlled Oral Word

Association; (10) NAB Naming; (11) Semantic Fluency; (12) Wide Range Achievement Test, 4th

Edition; (13) Brief Symptom Inventory; and (14) Minnesota Multiphasic Personality Inventory-2

Restructured Form.  Tr. 1373.  Dr. Strutt also took Ms. Garza's medical/psychiatric history,

educational/vocational history, family/development history, and functional information.

Tr. 1373-75.  Dr. Strutt indicated her observations regarding Ms. Garza's behavior and noted her

neuropsychological findings based on the various administered tests.  Tr. 1376-77.  Dr. Strutt

diagnosed Ms. Garza with major depressive disorder, recurrent, severe; mild neurocognitive

disorder due to multiple etiologies (lupus and psychiatric symptoms); and posttraumatic stress

disorder.  Tr. 1377.  Dr. Strutt's prognosis was that

> [b]ased upon her constellation of symptoms, Ms. Garza's prognosis for
> rehabilitation is poor as her current psychiatric symptomatology and cognitive
> impairment negatively impacts her ability to function in a competitive, sustained
> manner.  She is in need of intensive mental health services that focus on her

complex psychological symptoms.  Once her mood and behaviors have stabilized
with treatment, she should be referred for vocational rehabilitation.

Tr. 1377.

On January 1, 2018, Dr. Strutt completed a *Mental Impairment Questionnaire* in which
she indicated that Ms. Garza met the listing criteria for 12.04, *Depressive, bipolar and related
disorders*.  Tr. 1382-83.  Dr. Strutt rated the degree of Ms. Garza's functional limitations as
markedly limited in her ability to understand, remember, or apply information; moderately
limited in her ability to interact with others; markedly limited in her ability to concentrate,
persist, or maintain pace; and markedly limited in her ability to adapt and manage oneself.  Tr.
1383-84.  In support of her rated limitations, Dr. Strutt explained that

> [i]mpairments were found on measures assessing auditory attention, encoding and
> recall of non-contextual verbal material, non-verbal abstract reasoning, processing
> speed, verbal inhibition, set-shifting/mental flexibility, encoding and recall of
> contextual verbal material, and encoding of visual material.  Neuropsychological
> results meet criteria for a diagnosis of Mild Neurocognitive Impairment.

Tr. 1384.  She further explained that

> Ms. Garza's mental health history is chronic and complex.  She presently meets
> criteria for Major Depressive Disorder, PTSD and Mild Neurocognitive Disorder.
> She had engaged in mental health services, but improvements, if any have been
> short-lived.  Her recent diagnosis of Lupus also results in physical and cognitive
> symptoms which limit her functionality.

*Id.*

Dr. Strutt also assessed Mr. Garza's ability to do work-related mental activities.
Tr. 1385-86.  She assessed that Ms. Garza had moderate limitations in her ability to
(1) understand and remember simple interactions; (2) carry out simple instructions; and (3) make
judgments on simple work-related decision.  *Id.*  She assessed that Ms. Garza had marked
limitations on her ability to (1) understand and remember complex instructions; (2) carry out
complex instructions; (3) make judgments on complex work-related decisions; (4) interact

appropriately with supervisors; and (5) respond appropriately to usual work situations and to

changes in a routine work setting. *Id.*

Tr. 1386. In support, Dr. Strutt explained that

> Ms. Garza suffers from chronic mental health symptomatology that will likely
> increase in severity when under stress. She has been unable to make significant
> improvement regarding her symptoms of depression and post-traumatic stress
> disorder. In addition, her lupus is likely to result in variable cognitive declines,
> physical symptomatology and additional emotional distress. Neuropsychological
> findings revealed impairments in attention/concentration, processing speed and
> short-term memory that will impact her ability to function in a competitive,
> sustained manner. She is in need of intensive mental health services that focus on
> her complex psychological symptoms. Once her mood and behaviors have
> stabilized with treatment, she should be referred for vocational rehabilitation.

Tr. 1386.

### B.   The ALJ Failed to Provide Adequate Reasons for the Weight She Accorded Neuropsychologist Dr. Strutt's Opinion

In her determination, the ALJ stated she considered Dr. Strutt's independent medical

evaluation, including testing, and the mental impairment questionnaire Dr. Strutt completed on

Ms. Garza's behalf. Tr. 33. The ALJ stated that she gave "some weight" to Dr. Strutt's opinion

"proportionate to her opinion's overall supportability by the objective medical record." Tr. 33-

34.

Ms. Garza argues that the ALJ was obligated to give specific, legitimate reasons for the

weight she accorded Dr. Strutt's opinion, and to explain how any inconsistencies or ambiguities

in the medical evidence records were considered and resolved in rejecting certain of her

assessments, but that she failed to do so. Doc. 21 at 21-22. The Commissioner contends that it

is clear from the ALJ's determination that the ALJ rejected Dr. Strutt's opinion that Plaintiff met

the criteria for Listing 12.04 given the ALJ's step three findings that Ms. Garza's impairments

did not meet or equal in severity any of the listings described in the governing regulations. Doc.

25 at 12.  The Commissioner also contends that the extreme aspects of Dr. Strutt's opinion were inconsistent with her own psychological testing that reflected only mild cognitive impairment and sufficient mental functioning.  *Id.*

Social Security Regulations require ALJs to evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); SSR 96-6p, 1996 WL 374180.  Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors": (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d).  Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion. *Langley*, 373 F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).  Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.  Further, the Commissioner may not rationalize

16

the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The ALJs explanation that she accorded "some weight" to Dr. Strutt's opinion to the extent it was "proportionate to her opinion's overall supportability by the objective medical record" is insufficient.  First, the explanation is insufficient because it fails to link the weight accorded to specific evidence leaving the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion.  And the Court is not required nor empowered to parse through the summarized evidence to find support for the ALJ's decision.  *Gutierrez v. Colvin*, 67 F. Supp. 3d 1198, 1203 (D. Colo. 2014); *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988)) ("It is well settled the administrative agencies must give reasons for their decisions."); *see also Haga*, 482 F.3d at 1207-08 ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Second, the ALJ's explanation is insufficient because it fails to demonstrate she considered the relevant deferential factors discussed above which would favor according more weight to Dr. Strutt's opinion, *i.e.,* that Dr. Strutt was an examining physician, that she supported her conclusions with objective findings, and that she is a board certified clinical neuropsychologist offering an opinion in her area of specialty.  *See* 20 C.F.R. §§ 404.1527(c)(1), (3), (5); 416.927(c)(1), (3), (5) (generally we will give more weight to the medical opinion of a source who has examined you, to medical opinions that are supported by medical signs and laboratory findings, and to medical opinions from specialists who give opinions about medical issues related to his or her area of specialty).

Lastly, the ALJ's explanation is insufficient because it fails to explain why the ALJ accepted some of Dr. Strutt's assessed limitations while rejecting others. *See Haga,* 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Here, the ALJ's mental RFC arguably addressed certain of the moderate limitations Dr. Strutt assessed regarding Ms. Garza's ability to do work-related mental activities in the areas of understanding, remembering, or applying information and concentration, persistence, and pace. Tr. 30. However, the ALJ failed to address at all the marked limitations Dr. Strutt assessed in Ms. Garza's ability to interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting – which are mental abilities "critical" for unskilled work. Tr. 1386. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (explaining that the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to . . . respond appropriately to supervision, coworkers and usual work situations, and deal with changes in a routine work setting); *see also* POMS § DI 25020.010(A)(3), (B)(3)(k), (m). Further, both nonexamining State agency psychological consultants, Dr. Thompson and Dr. VanHoose, assessed that Ms. Garza had certain moderate limitations in her ability to do work-related mental activities in the area of social interaction and adaptability thereby lending consistency to Dr. Strutt's opinion.[12]  *See* 20 C.F.R. §§ 1527(c)(4),

---

[12] Examining medical consultant Cecilia P. Lonnecker, Ph.D., also assessed that Ms. Garza "may have difficulty in a competitive work setting" in light of her mental impairments. Tr. 811. Additionally, longitudinal treatment notes from Ms. Garza's mental health care providers support Dr. Strutt's diagnoses and also demonstrate a GAF score between 41-50 over a significant period of time indicating serious symptoms related to Ms. Garza's overall level of mental functioning. Tr. 967-68, 1329-361.  *See generally*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (considering GAF scores and expressing "concern" with scores of 46 and 50); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . ." but "[a] GAF score of fifty or less, . . . does suggest an inability to keep a job.").

927(c)(4) (the more consistent a medical opinion is with the record as a whole, the more weight

we will give to that medical opinion).  In sum, the ALJ offered no explanation for accepting

certain parts of Dr. Strutt's opinion while rejecting others.  Additionally, the Commissioner's

argument that the ALJ rejected "the extreme aspects of Dr. Strutt's opinion" because they "were

inconsistent with her own psychological testing that reflect only mild cognitive impairment and

sufficient mental functioning" is its own post-hoc rationalization, which the Court cannot accept.

*Haga*, 428 F.3d at 1208.  Moreover, the Commissioner's characterization of the psychological

testing results amounts to speculation.[13]

    For the foregoing reasons, the Court finds that the ALJ's explanation for the weight she

accorded Dr. Strutt's opinion is insufficient, and the Court is unable to meaningfully review the

ALJ's findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the

absence of findings supported by specific weighing of the evidence" in the record leaves the

Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see

also Haga*, 482 F.3d at 1208 (an ALJ must explain why even moderate limitations are rejected

when they conflict with the ALJ's RFC assessment).

---

[13] Dr. Strutt provided neuropsychological findings in the areas of mental status, intellectual, attention/concentration, executive, memory, language, visual-perceptual, motor functioning, cognitive testing summary, and mood/personality. Tr. 1376-77.  In the area of cognitive testing summary, Dr. Strutt indicated that "[i]mpairments were found on measures assessing auditory attention, encoding and recall of non-contextual verbal material, non-verbal abstract reasoning, processing speed, verbal inhibition, set-shifting/mental flexibility, encoding and recall of contextual verbal material, and encoding of visual material." Tr. 1377.  Dr. Strutt indicated that the neuropsychological results met criteria for a *diagnosis of Mild Neurocognitive Impairment* and rated the resulting degree of Ms. Garza's functional limitations as moderate and marked.  *Id.* (emphasis added).  Additionally, in the area of mood/personality, Dr. Strutt indicated various levels of psychological distress and concludes that Ms. Garza's overall "Global Severity Index (*i.e.*, general psychological distress) falling at a *clinically significant level* (T-score=80)."  Tr. 1377 (emphasis added).

C.    **The ALJ Failed to Account for the Moderate Limitations Assessed by Nonexamining State Agency Psychological Consultant Thomas VanHoose, Ph.D.**

Ms. Garza explains that in Section I of the MRFCA form Dr. VanHoose completed, Dr. VanHoose found that Ms. Garza had five moderate limitations in her ability to do work-related mental activities; *i.e.,* moderate limitations in her ability (1) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) to interact appropriately with the general public; (4) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (5) to respond appropriately to changes in the work setting. Doc. 21 at 22-27. Ms. Garza further explains that in the narrative section of the MRFCA, however, Dr. VanHoose assessed that Ms. Garza could, *inter alia,* attend and concentrate for extended periods and respond appropriately to changes in a routine work setting. *Id.* Ms. Garza argues that the narrative section fails to account for the moderate limitations found in Section I, as required, and is, therefore, not substantial evidence upon which the ALJ can properly rely in determining Ms. Garza's mental RFC. *Id.* Ms. Garza further argues that because the ALJ cannot rely on the narrative section of the MRFCA as substantial evidence, the ALJ's RFC failed to properly account for the moderate limitations Dr. VanHoose assessed in Section I. *Id.*

The Commissioner argues that the narrative section of MRFCA need not parrot the moderate limitations assessed in the worksheet section, and that that ALJ can account for moderate limitations by restricting a claimant to a particular type of work activity, such as simple or unskilled work. Doc. 25 at 15-17. Here, the Commissioner contends, the vocational expert

identified unskilled jobs which are consistent with mild or even moderate limitations in mental functioning.  *Id.*  As such, the Commissioner asserts there is no error and that the ALJ's mental RFC accounted for all of Ms. Garza's moderate functional limitations in her ability to do work-related mental activities.  *Id.*

The Tenth Circuit has specifically addressed the ALJ's responsibility in evaluating a State agency psychological consultant's MRFCA in light of the instructions printed on the forms and certain sections of the POMS that describe the separate functions of Sections I and III. Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[14]  Tenth Circuit case law further instructs that there is no reversible error in evaluating opinion evidence or assessing a claimant's RFC when an ALJ properly accounts for the effects of the limitations enumerated in Section I of the MRFCA.  *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ effectively

---

[14] In Section I, the State agency consultant found that the claimant had *moderate* limitations in the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors.  *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015).  In Section III, the State agency consultant assessed that the claimant could "perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public on a limited basis, and adapt to simple work situation."  *Id.*  The claimant argued that the State agency consultant's Section III assessment failed to account for the Section I moderate limitation in accepting instructions and responding appropriately to criticism from supervisors.  *Id.* at 618-19.  The Court disagreed and held that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors.  *Id.* at 619.  The Court further held that the ALJ's RFC sufficiently captured the essence of the State agency consultant's Section III assessment by limiting claimant to simple work and stating that claimant could "interact with co-workers and supervisors, under routine supervision."  *Id.* at 620.

accounted for *all* the limitations indicated in Section I of the MRFCA) (emphasis in original);[15]

*Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (finding no reversible error regarding the

ALJ's RFC assessment because the ALJ did not ignore the Section I limitations and the RFC

assessment reflected the moderate limitations identified in Section I of the MRFCA);[16] *Fulton v.*

*Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (finding that the ALJ did not err in evaluating

opinion evidence where he discussed only certain Section III findings because the ALJ

acknowledged the distinction between Section I and Section III of the MRFCA and the Court

found no contradiction between the two sections);[17] *Carver*, 600 F. App'x at 619 (finding no

---

[15] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to maintain attention and concentration for extended periods and *marked* limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public. *Nelson,* 655 F. App'x 626, 628 (10th Cir. 2016.)  In Section III, the State agency consultant assessed that "claimant is capable of carrying out simple instructions with routine supervision.  Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public.  Claimant can adapt to a work situation."  *Id.* at 629.  The Court noted that the ALJ, in turn and without error, incorporated the Section III findings into the RFC.  *Id.*  The Court further noted that "[m]ore to the point, by limiting [claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I[.]"  *Id.* (emphasis in original).  The Court explained that "[e]ven though [the State agency consultant] noted marked limitations in [claimant's] ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods[.]"  *Id.*

[16] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to (1) maintain attention and concentration for extended periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015). In Section III, the State agency consultant assessed that claimant could perform simple tasks, work with routine supervision, relate to supervisors on a superficial basis, and relate to peers on a superficial basis.  *Id.*  The ALJ adopted the Section III assessment.  *Id.* at 541.  The Court held that the Section III narrative and the ALJ's RFC "explained, accounted for, and delimited each of the moderate limitations expressed in the Section I of the MRFCA," and there was no error.  *Id.*

[17] In Section I, the State agency consultant found the claimant had moderate limitations in the ability to (1) work in coordination with or proximity to others without being distracted by them; and (2) respond appropriately to changes in the work setting.  *Fulton v. Colvin*, 631 F. App'x 498, 501-02 (10th Cir. 2015).  The State agency consultant found the claimant had marked limitations in the ability to interact appropriately with the general public.  *Id.*  In Section III, the State agency consultant assessed that the claimant was able to perform simple and some complex tasks under ordinary supervision, able to interact with co-workers and supervisors for incidental work purposes but should avoid public contact, and able to adapt to some work change.  *Id.*  The claimant argued that the ALJ erred by failing to account for certain of the State agency consultant's Section I findings.  *Id.*  The Court held that the ALJ properly looked to the Section III narrative as the State agency consultant's opinion regarding mental RFC because the Section III assessment did not contradict the effects of the Section I limitations.  *Id.*

reversible error regarding the ALJ's mental RFC assessment because the ALJ sufficiently captured the essence of psychological consultant's Section III narrative which had adequately encapsulated the Section I limitations).

Applying the Tenth Circuit's guidance here, the Court finds that Dr. VanHoose's Section III narrative contradicts certain of the moderate limitations he found in Section I.  In particular, Dr. VanHoose found in Section I that Ms. Garza had two moderate limitations in area of sustained concentration, persistence and pace, yet assessed in Section III that she could "attend and concentrate for *extended periods*."  Tr. 136-37, 152-54 (emphasis added).  "[A] moderate impairment is not the same as no impairment at all."  *Haga*, 482 F.3d at 1208.  As such, Dr. VanHoose's Section III narrative is not substantial evidence upon which the ALJ can rely. *Fulton*, 631 F. App'x at 502.

Further, a limitation to unskilled or simple work does not account for Dr. VanHoose's moderate limitations.  The Commissioner invokes *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), and *Vigil*, 805 F.3d 1199, to support that limiting a claimant to particular kinds of work, such as unskilled or simple, can adequately account for moderate limitations in the ability to do work-related mental activities.  Doc. 25 at 15-17.  The Court, however, is not persuaded. In *Smith*, the claimant argued that the ALJ should have included moderate nonexertional impairments in assessing residual functional capacity based on the consultant's evaluation. *Smith*, 821 F.3d at 1268.  The consultant found in Section I of the MRFCA that the claimant had moderate limitations in the ability to (1) maintain concentration, persistence, and pace; (2) remain attentive and keep concentration for extended periods; (3) work with others without getting distracted; (4) complete a normal workday and work-week without interruption for psychologically based symptoms; (5) perform at a consistent pace without excessive rest periods;

(6) accept instructions and respond appropriately to criticism by supervisors; (7) get along with coworkers or peers without distracting them or engaging in behavioral extremes; and (8) respond appropriately to changes in workplace; and (9) set realistic goals or independently plan. *Id.* The consultant applied the findings and concluded in Section III that the claimant could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.* The ALJ, in turn, arrived at a similar assessment, concluding that the claimant (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks. *Id.* at 1269. In its discussion, the Court noted that the notations of moderate limitations served only as an aid to the consultant's assessment and that the Court should compare the ALJ's RFC findings to the consultant's narrative opinion and not the Section I notations of moderate limitations. *Id.* at 1269 n.2. The Court favorably cited *Lee v. Colvin*[18] as an example of where the administrative law judge did not repeat the moderate limitations found in Section I, but incorporated the limitations by stating *how* the claimant was limited in the ability to perform work-related activities. *Id.* The Court also cited *Vigil v. Colvin*,[19] wherein the Court held that an administrative law judge can account for moderate limitations by limiting a claimant to particular kinds of work activity. *Id.* Based on the reasoning in *Lee*, the Court rejected the claimant's argument that the ALJ should have assessed additional nonexertional limitations.[20] *Id.*

---

[18] 631 F. App'x 538 (10th Cir. 2015 ) (unpublished).

[19] 805 F.3d 1199, 1204 (10th Cir. 2015).

[20] Other judges in this District have declined to follow *Smith* on the grounds that it is inconsistent with *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) and *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007) and that one panel of the circuit court cannot overrule another. *See, e.g., Silva v. Colvin*, 203 F.Supp.3d 1153 (D.N.M. 2016), *Cordova v. Berryhill*, Civ. No. 17-611 SMV, 2018 WL 2138647, at *7 (D.N.M. May 9, 2018); *Jones v. Berryhill*, Civ. No. 15-842 LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017).

In *Vigil*, the Tenth Circuit held that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a restriction to unskilled work. *Vigil*, 805 F.3d at 1204. In that case, the ALJ found at step three that the claimant was moderately limited in the ability to maintain concentration for extended periods.[21] *Id.* at 1203. At the "more detailed" step four assessment of the claimant's RFC, the ALJ found some evidence indicating that the claimant had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks." *Id*. The ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil retain[ed] enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04. The Court reasoned that the ALJ's RFC limiting claimant to unskilled work was appropriate in that case because the Social Security Administration's Program Operations Manual System indicated that the capacity to perform unskilled work includes the ability to maintain attention for extended periods of two-hour segments, but that concentration is "not critical." *Id.* at 1204. The Court further reasoned that unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." *Id.* Therefore, because the claimant's moderate limitation in his ability to maintain concentration for extended periods did not impact the basic demands of unskilled work, the Court concluded that the evidence in the

---

[21] On the MRFCA form, there are eight questions related to a claimant's ability to sustain concentration and persistence. One of those questions addresses a claimant's ability to maintain attention and concentration for extended periods. Tr. 97.

record regarding claimant's mental status supported the ALJ's RFC determination that limiting him to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace.  *Id.*

Certain of the moderate limitations the consultants assessed here were not addressed in either *Smith* or *Vigil*.  For instance, *Vigil* only addressed the ability to maintain attention and concentration for extended periods.  Here, the consultant's moderate limitations in the area of sustained concentration and pace also included the ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Significantly, the latter requirement is considered critical for performing unskilled work and defined as being "usually strict."  *See* POMS DI 25020.010.B.3.i – *Mental Abilities Critical for Performing Unskilled Work*.  Dr. VanHoose also included moderate limitations in Ms. Garza's ability to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting, two of which are also considered critical for performing unskilled work.  *Id.* at B.3.l, m.  Thus, given the narrow issue addressed in *Vigil* regarding whether unskilled work could adequately account for a moderate limitation in a claimant's ability to maintain attention and concentration for extended periods, the Court is not persuaded that *Vigil* stands for the broad proposition that unskilled or simple work adequately addresses all of the moderate mental limitations at issue here and allows the ALJ to collapse these limitations into "simple, routine, repetitive work, with 1, 2, or 3 step instructions, in an environment requiring few decisions."  *See Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished)

("[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments") (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)).  And although *Smith* addressed more of the moderate limitations that are at issue here, it did not address Dr. VanHoose's moderate limitation in Ms. Garza's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, which is a limitation not assumed in unskilled or simple work. *Vigil*, 805 F.3d at 1204.

For the foregoing reasons, the Court is not persuaded that limiting Ms. Garza to simple or unskilled work relieved the ALJ of her obligation to address the Dr. VanHoose's Section I limitations in her RFC mental assessment of Ms. Garza's ability to do work-related mental activities.

**D.     Remaining Issues**

The Court will not address Ms. Garza's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**IV.  Conclusion**

For the reasons stated above, Ms. Garza's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 21) is **GRANTED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**